# Holtzman Vogel

## HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC

July 6, 2023

Unites States Court of Appeals for the Fifth Circuit
600 S. Maestri Place,
Suite 115
New Orleans, LA 70130

      Re: No. 22-30333    *Robinson v. Ardoin*

                  USDC No. 3:22-CV-211
                  USDC No. 3:22-CV-214

To the Honorable Court:

Appellants the State of Louisiana, by and through its Attorney General Jeff Landry; Louisiana Secretary of State Kyle Ardoin; Clay Schexnayder; and Patrick Page Cortez (collectively, "Appellants") write pursuant to the Court's June 28, 2023 Memorandum to Counsel. (Doc. 242.) The Court requested that the parties file letters "addressing whether this court should remand the appeal to allow the district court to consider" new Supreme Court authority. (*Id.* at 1.) It is Appellants' position that this Court should vacate and remand this matter to permit the district court to adjudicate Plaintiffs' claims on the merits in light of *Allen v. Milligan*, 143 S. Ct. 1487 (2023), and *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, No. 20-1199, 2023 WL 4239254 (Jun. 29, 2023) ("*SFFA*").

"As a court for review of errors," this Court does not "decide facts or make legal conclusions in the first instance" but rather "review[s] the actions of a trial court for claimed errors." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). "In other words, a court of appeals sits as a court of review, not of first view." *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (quotation marks omitted). Applying that rule, this Court's general practice in cases impacted by "material changes of fact or law . . . during the pendency of an appeal" is vacatur and remand. *Fanning v. City of Shavano Park, Texas*, 853 F. App'x 951 (5th Cir. 2021) (discussing *Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649–50 (5th Cir. 1978), and *Montano v. Texas*, 867 F.3d 540, 546–47 (5th Cir. 2017)); *see also, e.g., Spell v. Edwards*, 849 F. App'x 509, 509 (5th Cir. 2021) (explaining that "[i]n making its determinations, the district court did not have the benefit of considering the Supreme Court's recent cases" and vacating and remanding for reconsideration "in light of Supreme Court authority"); *SEC v. Team Res., Inc.*, 815 F. App'x 801, 801 (5th Cir. 2020) ("In this case, the district court did not have the benefit of [a recent Supreme Court case's] guidance when it determined the amount of disgorgement. Application of [that case] to the facts of this case should be left in the first instance to the district court's sound judgment.").

In appeals from injunctions, the rule is no different; the standard practice in cases impacted by intervening authority is to vacate the injunction and remand for the district court to consider the impact of that authority in the first instance. *See, e.g., Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119, at *1 (9th Cir. Nov. 17, 2022) ("The district court's April 23, 2020, preliminary injunction order is vacated, and this case is remanded to the district court for further proceedings

consistent with the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v.* Bruen, 597 U.S. —— (2022)."); *Courthouse News Serv. v. Yamasaki*, 950 F.3d 640 (9th Cir. 2020) ("The district court's preliminary injunction order, summary judgment order and order entering final judgment are vacated, and the case is remanded for further proceedings consistent with this court's opinion in *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020)."); *Nextg Networks of California, Inc. v. City of Huntington Beach*, 294 F. App'x 303 (9th Cir. 2008) ("The City of Huntington Beach, California appeals two preliminary injunctions entered by the district court in this case. We vacate the injunctions and remand to the district court for further consideration in light of our recent decision in *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571 (9th Cir. 2008) (en banc), reversing *City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir.2001)."); *Edwards v. City of Santa Barbara*, 70 F.3d 1277 (9th Cir. 1995) ("We vacate the district court's preliminary injunction and remand for reconsideration of the motion for the preliminary injunction in light of *Sabelko v. The City of Phoenix*, No. 94–15495, slip op. 13739 (9th Cir. Oct. 19, 1995)."); *Int'l Rectifier Corp. v. IXYS Corp.*, 188 F. App'x 1001 (Fed. Cir. 2006). This Court's authority for these actions is well established. *See* 28 U.S.C. § 2106; *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir.1997) (describing "[a] federal appellate court['s] supervisory powers").

Here, the Court should adhere to its general practice, vacate the district court's June 6, 2022, preliminary injunction, remand this case for further proceedings, and direct the district court to conduct a trial on the merits and reach a final judgment in advance of the 2024 congressional elections in Louisiana. It should do so for at least three reasons.

1.    This is the paradigmatic case where a trial court should address intervening authority in the first instance. Two Supreme Court decisions that bear on this case have been issued during the pendency of the appeal: (1) *Milligan*, 143 S. Ct. 1487 (2023); and (2) *SFFA*, No. 20-1199, 2023 WL 4239254 (Jun. 29, 2023).

In *Milligan*, the Supreme Court addressed Section 2 of the Voting Rights Act for the first time in 14 years, *see Bartlett v. Strickland*, 556 U.S. 1 (2009), and provided guidance not available to the district court when it ruled on Plaintiffs' motion for a preliminary injunction. *Milligan* reaffirmed the three preconditions of *Thornburg v. Gingles*, 478 U.S. 30 (1986), *see* 143 S. Ct. at 1503–04, but clarified how those preconditions apply under the fact-intensive Section 2 inquiry*, see id*. at 1504–06. In particular, the Court demonstrated "how traditional districting criteria limit[] any tendency of the VRA to compel proportionality," *id.* at 1509, yet the district court in this case founded its injunction at least in part on a proportionality goal that is no longer tenable, *see Robinson v. Ardoin*, 605 F. Supp. 3d 759, 851 (M.D. La. 2022) ("The Court finds that Black representation under the enacted plan is not proportional to the Black share of population in Louisiana."). Further, *Milligan* emphasized the centrality of communities of interest in the Section 2 analysis, *see* 143 S. Ct. at 1505, and a motions panel of this Court has already concluded that the district court's analysis of this element is "not without weaknesses," *Robinson v. Ardoin*, 37 F.4th 208, 215 (5th Cir. 2022). In short, it is possible, if not probable, that the district court will reach a different conclusion under *Milligan*, and it should have the first opportunity to consider the scope of this intervening authority.

Additionally, *SFFA* has considerably altered the landscape of cases, such as this one, that involve state action requiring racial classifications. 2023 WL 4239254, at *12 ("Eliminating racial

discrimination means eliminating all of it."). Indeed, the *SFFA* Court made clear that as statutes requiring race-based classification achieve their intended ends, they will necessarily become obsolete. *See id.* at *14–21 (explaining that *Grutter v. Bollinger*, 539 U. S. 306 (2003), "made clear that race-based admissions programs eventually had to end" and that the instant facts demonstrated that the time had come). And we have seen similarly once-permissible racial classifications be held unconstitutional when the facts justifying their existence were no more—specifically in the Voting Rights Act ("VRA") context. *See Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013) (holding part of the VRA unconstitutional because "[o]ur country has changed, and while any racial discrimination in voting is too much, Congress must ensure that the legislation it passes to remedy that problem speaks to current conditions"). Consequently, the district court should be permitted to address, in the first instance, whether the facts on the ground here similarly warrant a rejection of Section 2 of the VRA, as applied, because it is no longer necessary. *See id.* at 536 ("[C]urrent burdens . . . must be justified by current needs." (quoting *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009))).

Notably, this temporal argument was acknowledged by members of the *Milligan* Court but, because it was not properly raised, the Court did not consider it. 143 S. Ct. at 1519 (Kavanaugh, J., concurring) ("Justice Thomas notes, however, that even if Congress in 1982 could constitutionally authorize race-based redistricting under §2 for some period of time, the authority to conduct race-based redistricting cannot extend indefinitely into the future. See *post*, at 1543–1544 (dissenting opinion). But Alabama did not raise that temporal argument in this Court, and I therefore would not consider it at this time."). Indeed, eight Justices in *Milligan* appeared to conclude that the first *Gingles* precondition cannot be satisfied where race is the predominant factor in the creation of an illustrative comparator. *See* 143 S. Ct. at 1510–12; *id.* at 1527 (Thomas, J., dissenting). That predominance test is essential to mitigate the problem of race-based classifications identified in *SFFA*, and the district court should address the interplay of these decisions, as applied to this case, in the first instance on remand.

2.      Plaintiffs' request for a preliminary injunction is now moot, and they cannot show irreparable harm pending trial. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, a plaintiff "must demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). By consequence, a request for provisional relief generally "is mooted by the occurrence of the action sought to be enjoined." *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998) (citation omitted); *see also Matos ex rel. Matos* v. *Clinton Sch. Dist.*, 367 F.3d 68, 72 (1st Cir. 2004) (Selya, J.) (same).

In this case, the district court held that "Plaintiffs have demonstrated that they will suffer an irreparable harm if voting takes place in the 2022 Louisiana congressional elections" under the enacted plan. *Robinson*, 605 F. Supp. 3d at 851. But Louisiana conducted its 2022 congressional elections under the challenged redistricting plan, and Plaintiffs can no longer claim an entitlement to relief as to those elections. Thus, they have no live claim of irreparable harm. With reasonable diligence, Plaintiffs can prosecute their claims to final judgment in advance of the 2024 congressional elections and have no need for a preliminary injunction in the meantime. Additionally, the district court's basis for seeking to impose a remedial redistricting plan as "mandatory preliminary relief" was the then-impending 2022 congressional elections. *See id.* at

856–57. But the case the district court cited, *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974), applies a rule of necessity that cannot be satisfied here, where there is no need for a status quo-altering remedial injunction pending trial. There would, in turn, be no purpose to litigating Plaintiffs' entitlement to a preliminary injunction in this appeal.

3.      Vacatur and remand is the optimal case-management approach under the circumstances. The district court issued the June 6, 2022 injunction after highly expedited proceedings, and it did not have the benefit of a fulsome record. *Compare Milligan*, 143 S. Ct. at 1502 (noting that "the three-judge District Court" in the underlying litigation "received live testimony from 17 witnesses, reviewed more than 1000 pages of briefing and upwards of 350 exhibits, and considered arguments from the 43 different lawyers who had appeared in the litigation"). With the benefit of time and a complete record, the district court will stand in a better position to adjudicate the difficult, fact-intensive issues this case presents. This orderly process will permit the parties to brief any issues with respect to recent Supreme Court authority in the normal course without the need for a preliminary injunction proceeding that should have no bearing on any elections as there is sufficient time—should the district court move expeditiously—to have a full trial on the merits (or alternatively a ruling on Summary Judgment) before the next congressional elections. This process will also clarify that a trial on the merits has not already occurred, and that the merits of the case must be properly addressed by the district court. *See Robinson*, 605 F. Supp. 3d at 856 (conducting a preliminary injunction hearing as though it was a bifurcated trial of liability and remedies).

For the forgoing reasons, Appellants request that the court (1) vacate the district court's June 6, 2022, preliminary injunction, (2) remand this case back to the district court, and (3) order the district court to conduct a trial on the merits and reach a final judgment before the end of 2023, allowing plenty of time for resolution of the matter before the 2024 elections.

Respectfully submitted,

/s/ Angelique Duhon Freel
Elizabeth B. Murrill (LSBA No. 20685)
Solicitor General
Shae McPhee (LSBA No. 38565)
Angelique Duhon Freel (LSBA No. 28561)
Carey Tom Jones (LSBA No. 07474)
Amanda M. LaGroue (LSBA No. 35509)
Jeffrey M. Wale (LSBA No. 36070)
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
murrille@ag.louisiana.gov
mcphees@ag.louisiana.gov
freela@ag.louisiana.gov
jonescar@ag.louisiana.gov

/s/ Jason Torchinsky
Jason B. Torchinsky (DC Bar No 976033)
**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
2300 N Street, NW
Suite 643A
Washington, DC 20037
Tel: 202-737-8808
Email: jtorchinsky@holtzmanvogel.com


Phillip M. Gordon (DC Bar No. 1531277)
**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: (540) 341-8808
Facsimile: (540) 341-8809

lagrouea@ag.louisiana.gov
walej@ag.louisiana.gov

*Counsel for Louisiana Attorney General Jeff Landry*

/s/ *Richard B. Raile**
RICHARD B. RAILE
KATHERINE L. MCKNIGHT
E. MARK BRADEN
RENEE M. KNUDSEN
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: (202) 861-1711
Email: rraile@bakerlaw.com

*Attorneys for Clay Schexnayder and Patrick Page Cortez*

      **Signed with permission*

Email: pgordon@holtzmanvogel.com

MICHAEL W. MENGIS
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002

PATRICK T. LEWIS
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114

ERIKA DACKIN PROUTY
BAKER & HOSTETLER LLP
200 Civic Center Dr., Suite 1200
Columbus, OH 43215

/s/ *John C. Walsh*
John C. Walsh (Louisiana Bar Roll No. 24903)
john@scwllp.com
**SHOWS, CALI & WALSH, L.L.P.**
P.O. Box 4046
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561

*Counsel for R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana*

/s/ *Phillip J. Strach (Lead Counsel)*
phillip.strach@nelsonmullins.com
Thomas A. Farr
tom.farr@nelsonmullins.com
Alyssa M. Riggins
alyssa.riggins@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
301 Hillsborough St, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799